ATLAS DIESEL ENGINE CORPORATION
et al. v. ATLAS DIESEL SCHOOL, Inc.

No. 2816.

District Court, E. D. Missouri, E. D.

May 4, 1945.

John H. Cassidy, of St. Louis, Mo., and
Oscar Alvin Mellin, of San Francisco, Cal.,
for plaintiffs.

Albert E. Hausman and Francis L. Kane,
both of St. Louis, Mo., for defendant.

HULEN, District Judge.

Plaintiffs seek injunctive relief against
the defendant's using the name "Atlas" or
"Atlas Diesel" in connection with any
business associated directly or indirectly
with internal combustion engines or in
connection with any servicing of such en-
gines. There is no substantial dispute as
to the material facts, which we find as
follows:

### Facts

I. Atlas Imperial Diesel Engine Compa-
ny is a corporation organized under the laws
of the State of Delaware, has its execu-
tive offices at San Francisco, California,
and has factories at Oakland, California,
and Mattoon, Illinois; Atlas Diesel En-
gine Corporation is a corporation organized
under the laws of the State of New York,
and has a place of business at New York
City, State of New York, and is a sub-
sidiary of Atlas Imperial Diesel Engine
Company; Atlas Engine Company is a cor-
poration organized under the laws of the
State of Washington, and has a place of
business at Seattle, State of Washington,

and is also a subsidiary of the Atlas Imperial Diesel Engine Company. The business of Atlas Imperial Diesel Engine Company is the manufacturing, selling, repairing, rebuilding and servicing of Diesel engines. The business of Atlas Diesel Engine Corporation and Atlas Engine Company is the selling, repairing and servicing of Diesel engines.

II. The defendant is a corporation organized under the laws of the State of Missouri, and has a place of business at St. Louis, State of Missouri. It was incorporated on December 24, 1940 under the name of Atlas Aircraft Trade School, Inc. On December 4, 1943, the name was, by amendment, changed to Atlas Diesel School, Inc. The business of defendant is the business of training Diesel engine mechanics and Diesel engine operators in the art of servicing, repairing and rebuilding, and operating Diesel engines.

III. Atlas Imperial Diesel Engine Company is the direct successor in interest of the Atlas Gas Engine Company and the Imperial Gas Engine Company, which last named companies were formed and in the business of manufacturing and selling internal combustion engines as early as the year 1905. Atlas Imperial Diesel Engine Company and its predecessors in interest have used the trademark and trade name "Atlas" on internal combustion engines manufactured by said plaintiff and its predecessors in interest, and sold in interstate commerce continuously since the year 1905. Atlas Imperial Diesel Engine Company and its predecessors in interest were pioneers in the field of manufacture of Diesel engines, and since some time prior to November 9, 1927, plaintiff, Atlas Imperial Diesel Engine Company has been engaged almost exclusively in the manufacture, sale, servicing, repairing, and rebuilding of Diesel engines throughout the entire United States of America, its territories and possessions and throughout many foreign countries, and has built up a large and enviable reputation and good will in connection with said business.

IV. The value to the plaintiff of maintaining its good will in its business, operated as here found, is in excess of Three Thousand Dollars ($3000). Atlas Imperial Diesel Engine Company has each year for a considerable number of years preceding the filing of the complaint herein, spent large sums of money in advertising its products and services throughout the entire United States of America and throughout certain foreign countries, and said advertising consists principally in the advertising of its engines as a result of which they are known as "Atlas" and "Atlas Diesel." The money spent in advertising by plaintiff Atlas Imperial Diesel Engine Company, for the ten calendar years immediately preceding the filing of the complaint herein, and in sales promotion of its products, exceeded the sum of One Million Eight Hundred Thousand Dollars ($1,800,000).

V. The annual sales by plaintiffs of Diesel Engines, under trademark "Atlas" and parts thereof, for ten years immediately preceding the filing of the complaint herein, amounted to a sum in excess of Thirty-one Million Dollars ($31,000,000), not including accessories sold in connection with said engines.

VI. Atlas Imperial Diesel Engine Company has for many years, prior to the present war emergency, and interrupted only during this emergency, conducted a system of training and schooling mechanics for work in connection with the building of Diesel engines, and in the servicing and repairing thereof. In the Diesel engine business many manufacturers, in addition to plaintiffs, follow the practice of educating, training and schooling mechanics for work in connection with the building, repairing and servicing of Diesel engines, and this fact is well known to the owners and operators of Diesel engines.

VII. Diesel engines produced by plaintiffs and to which the trade-mark "Atlas" has been applied have been sold in every state of the United States and in most foreign countries.

VIII. The Diesel engine trade and industry and that part of the public interested in Diesel engines, commonly refer to and identify plaintiff Atlas Imperial Diesel Engine Company as "Atlas" or "Atlas Diesel." The Diesel engine trade and that part of the public interested in Diesel engines, commonly refer to the engines manufactured and sold by plaintiffs by the name "Atlas" or the name "Atlas Diesel." For more than twenty years immediately preceding the filing of the complaint herein, the trademark and trade name "Atlas" and the trade name "Atlas Diesel" have been understood by that part of the public interested in Diesel engines and in the Diesel engine trade and industry as designating the goods and business of

the plaintiffs, and have been so exclusively identified with the goods and business of the plaintiffs as to have acquired a secondary meaning so as to indicate the goods and business of the plaintiffs and theirs alone.

IX. Plaintiffs have for many years prior to the filing of the complaint herein established a high reputation for the excellence of their products, and for the excellence of their workmanship in repairing, servicing and rebuilding Diesel engines.

X. While defendant's business is conducted locally, its graduate students will, in the natural course of things, seek employment as Diesel engine service men and Diesel engine operators throughout all parts of the United States.

XI. The defendant's corporate name, because it includes the word "Atlas" in connection with the word "Diesel" is so confusingly similar to that of the plaintiffs that a confusion as to identity between plaintiffs and defendant, their activity, advertising, and services will result. Such confusion of identities will have the effect of destroying the good will and reputation heretofore established by the plaintiffs; and such confusion of identities will result in Diesel engine owners and operators and others interested in Diesel engines being led to believe that the graduate students of defendant were trained by plaintiffs.

XII. During the month of January, 1944, the plaintiffs did in writing call the attention of defendant to the apparent confusion that would result because of the use by defendant of the trade-mark "Atlas" and the trade name "Atlas Diesel" in its corporate name, and demanded that defendant desist from using the word "Atlas" and the trade name "Atlas Diesel" in its corporate name, and such demand was forthwith refused by defendant.

■■ The law of unfair competition as applied to this case has for its purpose the prevention of a person from passing off his business as the business of another. Standard Oil Co. of New Mexico v. Standard Oil Co. of California, 10 Cir., 56 F.2d 973. The overwhelming weight of the evidence in this case leaves the Court convinced that over a period of years plaintiffs have built up an enviable reputation and good will in connection with their business of selling, repairing, and servic-

ing internal combustion engines and particularly Diesel engines, and that the words "Atlas" and "Atlas Diesel" have come to be understood by the public, trade and industry as designating the product and business of plaintiff, and these terms have become so exclusively identified with the product and business of the plaintiffs as designating the goods manufactured, sold and serviced by them, as to have acquired a secondary meaning in the industry. Without proof of such secondary meaning, the words under consideration could not be the subject of an exclusive appropriation by the plaintiff and protection. Standard Oil Co. v. Michie, D.C., 34 F.2d 802. Plaintiff makes no claim to protection of the trademark "Atlas" beyond the field of combustion engines.

■ Does defendant's use of the words "Atlas Diesel School, Inc.," trespass on the rights of the plaintiff and the public to the extent of constituting unfair competition? There is no substantial evidence that there has been, up to this time, any case of actual deception of the public or damage sustained by the plaintiffs by virtue of defendant's use of the words. There was proof on behalf of witnesses engaged in endeavors where internal combusion engines were used, manufactured, and sold, some of them competitors of plaintiffs, that deception would result if the defendant were permitted to continue the use of the name "Atlas Diesel School, Inc." The evidence on this phase of the case was substantial and convincing, and came from witnesses in various sections of the United States. Aside from such proof we think it too plain for argument that deception, either intended or innocent, is bound to follow in the combustion engine industry and among those who use such engines, in the defendant's continued use of the words "Atlas" or "Atlas Diesel." The defendant is engaged in a kindred business to that of the plaintiffs. That the business of the enterprises conducted by plaintiffs and defendant will come in contact would seem to follow as a matter of course. What could be more natural and probable than that if a graduate of defendant's school represents himself as a graduate of "Atlas Diesel School, Inc.," one in the industry employing such a graduate will assume that plaintiffs are vouching for the learning and character of training of the person involved, or that plaintiffs have some part in the operation of the school.

Especially is this conclusion inevitable since plaintiffs train men to service Diesel engines on the same theory if not by the same methods as the defendant. Under this state of facts, plaintiffs are entitled to injunctive relief, even though there is no direct proof of actual deception of the public or damage to the plaintiffs. See Standard Oil Co. v. Michie, supra, and cases there cited. Also Queen Manufacturing Co. v. Isaac Ginsberg & Brothers, 8 Cir., 25 F.2d 284, 288.

A number of the officers of defendant testified that they changed the name of defendant corporation to "Atlas Diesel School, Inc.," without any knowledge of plaintiffs' use of the name "Atlas" and "Atlas Diesel." Neither of these officers claimed any experience and knowledge in the Diesel Engine industry. It is hard to understand how defendant and its officers could have embarked in the business of training men to service Diesel engines in the industry without knowledge of the plaintiffs and their place in that industry and their use of the name "Atlas" and "Atlas Diesel." But, giving to the testimony of defendants' officers full faith and credit, such innocence of any intentional wrongdoing cannot serve as a basis for the continued use of the name "Atlas" and "Atlas Diesel" after knowledge of their prior use had been brought home to the defendant.

In the case of Queen Manufacturing Co. v. Isaac Ginsburg and Brothers, supra, the Court stated:

"Where, however, the defendant has refused on notice to cease the use of a mark or label, the natural and probable result of which will be to deceive the public, and palm off the goods of the defendant as the goods of the plaintiff, fraudulent intent will be presumed."

We think that the rule announced in the Queen Manufacturing Co. case is of particular application under the facts here presented, where the defendant admits that it was put on notice of plaintiffs' use of the names Atlas and Atlas Diesel and plaintiffs' objection to the defendant's use of those names within thirty days of the defendant's commencing their use. If defendant did not consider that the good will and standing in the industry which the plaintiff had built up in the use of the two names referred to, was a thing of value, and that the defendant would receive benefit from the use of such names, the question presents itself—why did the defendant persist in using them? Resulting solely from defendant's use, the names could have acquired little or no value to defendant in thirty days' time.

Under the circumstances of this case, use of the name "Atlas" by others, in other industries, constitutes no defense or justification for the course followed by the defendant under the circumstances here presented. Bond Stores v. Bond Stores, 3 Cir., 104 F.2d 124. Neither the fact that the State of Missouri issued a charter to the defendant in the name now complained of by the plaintiffs, nor the fact that the plaintiffs are not authorized to do business in the State of Missouri confers any rights upon the defendant to appropriate and use the name "Atlas" or "Atlas Diesel" under the circumstances presented by the record in this case. General Film Co. of Missouri v. General Film Co. of Maine, 8 Cir., 237 F. 64.

### Conclusions of Law.

I. The trade-mark "Atlas" is the exclusive property of the plaintiff, Atlas Imperial Diesel Engine Co., as applied to Diesel engines and parts thereof, and has acquired a secondary meaning in the Diesel Engine field and with that portion of the public interested in Diesel engines, as meaning the goods and business of plaintiffs and theirs alone, and plaintiffs are entitled to the exclusive use of said mark in said field.

II. The trade name "Atlas Diesel" has acquired a secondary meaning in the Diesel engine field and to that part of the public interested in Diesel engines, as meaning plaintiffs' business and plaintiffs' engines and theirs alone, and plaintiffs are entitled to the exclusive use of said trade name in said field.

III. The defendant's use and appropriation of plaintiffs' trade-mark "Atlas" by the inclusion thereof in defendant's name "Atlas Diesel School, Inc." constitutes an act of unfair competition for which plaintiffs are entitled to relief.

IV. Defendant's use and appropriation of plaintiffs' trade name "Atlas Diesel" by the inclusion thereof in defendant's name "Atlas Diesel School, Inc.," constitutes an act of unfair competition for which plaintiffs are entitled to relief.

V. Defendant having refused to cease the use of the trade-mark "Atlas" and the

trade name "Atlas Deisel," defendant is presumed to have continued the use thereof, after notice of plaintiffs' rights, with the intention to trade on the reputation and good will of plaintiffs in that defendant is presumed to have intended the natural and probable consequences of its acts.

VI. It is unnecessary in order to make out a case of unfair competition, for the plaintiff to show that any person has actually been deceived by defendant's conduct, where it appears that the probabilities are that they will.

VII. The use of plaintiffs' trade-mark "Atlas" and trade name "Atlas Diesel" by others in industries other than the Diesel or internal combustion engine field, confers no right to the use of the trade-mark "Atlas" or the trade name "Atlas Diesel" by this defendant in the internal combustion or Diesel engine field.

VIII. Although the business of plaintiffs and the business of defendant are not now directly competitive, nevertheless the plaintiffs are entitled to the relief sought, because there is a probability of interference and persons being deceived by defendant's continued use of the names.

IX. Defendant has wrongfully and unlawfully used and appropriated plaintiffs' trade-mark "Atlas" in violation of plaintiffs' rights of ownership in said trade-mark.

X. Defendant has wrongfully and unlawfully used and appropriated plaintiffs' trade name "Atlas Diesel" in violation of plaintiffs' rights of ownership in said trade name.

XI. Neither the fact that the State of Missouri granted to defendant its corporate charter, nor the fact that defendant is operating under its own name, confers any right on defendant to wrongfully appropriate or use plaintiffs' trade-mark "Atlas" or trade name "Atlas Diesel" in violation of plaintiffs' rights.

XII. The fact that plaintiffs are not doing business in the State of Missouri, and have not filed a certificate of doing business in said State pursuant to the Statutes thereof, does not preclude plaintiffs from relief in this action.

XIII. Plaintiffs are entitled to a permanent injunction enjoining defendant, its officers, agents and employees and each of them, from using the trade-mark or word "Atlas," or the trade name or combination of words "Atlas Diesel" in any manner or fashion whatsoever in connection with any business associated directly or indirectly with internal combustion or Diesel engines, or in connection with any products or services associated directly or indirectly with internal combustion and Diesel engines, or in connection with any institute or school for the training of Diesel engineers, Diesel engine repairmen, Diesel engine mechanics or Diesel engine servicemen.

XIV. The Court has jurisdiction of this cause.

XV. The plaintiffs are entitled to recover their costs and disbursements herein. Form of judgment in conformity herewith can be submitted.